IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

KIP SCHONING,

                    Plaintiff,                            No. 3:11-cv-1296-HZ

    v.

                                                            OPINION & ORDER

STATE FARM FIRE AND CASUALTY
COMPANY,

                    Defendant.

Kip Schoning
4363 NW Honeysuckle Drive
Corvallis, Oregon 97330

       Plaintiff Pro Se

Billy M. Sine
PARKS, BAUER, SIME, WINKLER & FERNETY LLP
570 Liberty Street SE, Suite 200
Salem, Oregon 97301

       Attorney for Defendant

1 - OPINION & ORDER

HERNANDEZ, District Judge:

Plaintiff Kip Schoning, appearing pro se, brings this action against Defendant State Farm Fire and Casualty Company.  In his Complaint, he contends Defendant refused to pay him the amount owed under an insurance policy following the loss of a rental property to fire.  Defendant moves for summary judgment on its affirmative defense asserting Plaintiff's non-compliance with provisions of his insurance policy. I grant the motion.

BACKGROUND

Plaintiff contends he or his wife, Michelle Schoning, own a private residence located at 239 Sheldon Avenue, Falls City, Oregon, and that on September 5, 2009, the residence was destroyed by fire.  Compl. at ¶ 1, 4, ECF No. 1.  Plaintiff alleges Defendant issued an insurance policy for the property covering losses due to fire.  Id. at ¶ 3.  Plaintiff alleges Defendant breached its insurance contract by denying his claim on May 12, 2010.  Id. at ¶ 6–8.  He seeks a judgment of $236,000, plus costs.  Id. at ¶ 8.

This case concerns insurance coverage for the loss of a private residence and the private property within.  Defendant's motion concerns whether Plaintiff complied with his duties after loss and, if he did not, the effect of noncompliance.

At the time of the loss, Plaintiff had a policy with Defendant, number 97-BB-F698-1. Rogers Decl. at ¶ 2, ECF No. 7; Rental Dwelling Policy 1, Def.'s Ex. 101.  Plaintiff's policy, 97-BB-F698-1, states in relevant part:

> SECTION I - CONDITIONS ***
> ***
> 2.        Your Duties After Loss. In case of a loss to which this insurance may apply, you

shall see that the following duties are performed:

\*\*\*

d. as often as we reasonably require:

\*\*\*

(2) provide us with records and documents we request and permit us to make copies; and
(3) submit to examinations under oath and subscribe the same;

\*\*\*

AMENDATORY ENDORSEMENT
(Oregon)
\*\*\*
Suit Against Us is replaced with the following:
Suit Against Us.  No action shall be brought unless there has been compliance with the policy provisions and the action is started within two years after the date of loss or damage.

Rental Dwelling Policy 5, 16, Def.'s Ex. 101.

In support of the motion, Defendant submits declarations and substantial documentation describing the claims process initiated by Plaintiff.  Plaintiff failed to respond to the motion and thus, submitted no evidence of his own.  Defendant's documents recite the following chronology of events:

On March 16, 2006, Plaintiff purchased the property located at 239 Sheldon Avenue, Falls City, Oregon.  Examination Under Oath ("EUO") of Pl. 40, Def.'s Ex. 109.  The property was secured by a mortgage issued by American Home Mortgage.  Rogers Decl. at ¶ 9.  A tenant occupied the property through March 1, 2009.  Id. at ¶ 10.  After March 1, 2009, the property occupancy status was unknown by Plaintiff.  EUO of Pl. 15–16, Def.'s Ex. 109.  However, Plaintiff suspected the property remained unoccupied because a potential tenant failed to complete the application process.  Id. at 16.

3 - OPINION & ORDER

The property was destroyed by a fire on September 5, 2009.  Rogers Decl. at ¶ 4.
Plaintiff's rental dwelling insurance policy, issued by Defendant, was in effect on that date.  Id. at
¶ 2.  On or about September 9, 2009, Plaintiff notified Defendant of the property's destruction.
Id. at ¶ 3.[1]  Joseph Rogers ("Rogers") was assigned to investigate the claim for Defendant.  Id. at
¶ 4.  On September 23, 2009, Rogers spoke with Plaintiff, informed him of the suspicious nature
of the fire, and scheduled a meeting for October 20, 2009.  Id. at ¶ 6.  Rogers sent Plaintiff a
letter memorializing their conversation, listing the relevant terms of the insurance contract, and
requesting Plaintiff bring any financial records related to the property to the meeting.  Id. at ¶ 7;
Sept. 23, 2009 Letter from Rogers, Def.'s Ex. 102.  James Carl, an investigator hired by Rogers,
reported the fire was classified as arson.  Rogers Decl. at ¶ 8.

Rogers met with Plaintiff on October 20, 2009.  Id. at ¶ 9.  At the meeting, Plaintiff
indicated the property was encumbered by a mortgage held by American Home Mortgage in an
amount between $120,000 and $140,000.  Id.; Interview with Rogers 8, Def.'s Ex.103.  Plaintiff
also admitted American Home Mortgage had foreclosed on the mortgage, but that there was a
workout plan or forbearance agreement.  Rogers Decl. at ¶ 9; Interview with Rogers 9–10, 21,
Def.'s Ex.103.  Plaintiff indicated the property was for sale at the time of the fire.  Interview with
Rogers 22, Def.'s Ex.103.  Plaintiff denied having knowledge of the cause of the fire and denied
starting the fire.  Id. at 27, 31.

On October 23, 2009, Rogers sent another letter to Plaintiff requesting specific
documents.  Rogers Decl. at ¶ 11; Oct. 23, 2009 Letter from Rogers, Def.'s Ex. 104.  Rogers

---

[1] The declaration of Rogers actually says the date of notification was September 9, 2011,
but that appears to be a typographical error.

4 - OPINION & ORDER

requested Plaintiff produce, among other things, the loan number for the mortgage encumbering the property, all documents related to foreclosure of the mortgage, and any documents related to the sale of the property.  Id.  On November 3, 2009, Plaintiff and Rogers spoke on the phone regarding the October 23, 2009 letter.  Rogers Decl. at ¶ 12.  Immediately after, Plaintiff sent a letter to Rogers memorializing the phone call and asserting, "My financial situation, or the fact that the property is in foreclosure, or on a forbearance or a loan modification, is not relevant to the facts of the claim."  Id. at ¶ 13; Nov. 3, 2009 Letter from Pl., Def.'s Ex. 105.

Defendant retained an attorney, Billy M. Sime ("Sime"), to represent the company in connection with Plaintiff's claim.  Nov. 16, 2009 Letter from Sime, Def.'s Ex. 108.  In a November 16, 2009 letter, Sime requested Plaintiff and his wife, Michelle Schoning,[2] each submit to an EUO, pursuant to the terms of the insurance agreement.  Id.  In that same letter, Sime requested Plaintiff produce nineteen documents related to the property.  Id.

Plaintiff was examined under oath on December 4, 2009.  Sime Decl. at ¶ 3.  Plaintiff and Michelle Schoning were informed, at the beginning of their EUOs, that, if a transcript of the EUO was sent to them, they were to make any corrections, sign it, notarize it, and return it.  EUO of Pl. 5, Def.'s Ex. 109; EUO of Michelle Schoning 4–5, Def.'s Ex. 110.  During the EUO, Plaintiff failed to respond to some of Sime's questions and failed to produce some of the documents requested in Sime's initial letter.  Of the documents requested, Plaintiff produced, in full or in part: (1) the lease termination notice given by tenant Raymond Chad Johnson

---

[2] Although Plaintiff is the named insured, pursuant to the terms of the insurance contract, Plaintiff's wife, Michelle, is included in that definition. Rental Dwelling Policy 10, Def.'s Ex. 101 ("'You' and 'your' mean the 'named insured' showed in the Declarations. Your spouse is included if a resident of your household.").

("Johnson"); (2) correspondence from Johnson; (3) all rental agreements for tenants after Johnson; (4) applications of and documents related to all tenants after Johnson; (5) the address, telephone number, and loan number for American Home Mortgage Services; (6) the original policy issued by Defendant; (7) copies of insurance policies covering the property prior to Defendant's policy; (8) documents advertising the property for rent or sale; (9) documents supporting a claim for loss of rents; and (10) a copy of cell phone records from July, August, and September 2009 . EUO of Pl. 11, 12, 15–16, 18–19, 33–34, 38, 39–40, 42, 52, Def.'s Ex. 109 (Plaintiff indicated he had been unable to obtain an entire copy of the original policy from Defendant's agent and it was unlikely there was prior insurance covering the property.).

Plaintiff failed to produce: (1) a copy of the loan agreement with American Home Mortgage Services; (2) all correspondence with American Home Mortgage Services; (3) a copy of Plaintiff's 2008 Schedule E; (4) documents evidencing loan payments made on mortgage encumbering the property; (5) documents evidencing pre-loss expenditures on property; and (6) documents from Defendant related to the property. Id. at 19–20, 23–24, 27, 43, 49, 50, 53. Additionally, Plaintiff refused to answer questions about his personal finances, lawsuits pending against him, unsecured debts, and the foreclosure status of his private home. Id. at 71–73, 75, 77, 82, 83.

Michelle Schoning's EUO also took place on December 4, 2009, and she failed to produce any of the missing documents. EUO of Michelle Schoning 12–13, Def.'s Ex. 110 ("[Sime]: Do you have that information written down? [Schoning]: I didn't bring any information. I thought you were just going to ask me general questions to see if I started the fire and I didn't.").

6 - OPINION & ORDER

On December 17, 2009, Sime sent a letter by certified mail to Plaintiff and enclosed a copy of his EUO transcript with directions to correct, sign, and notarize the document before returning it to him.  Sime Decl. at ¶ 5; Dec. 17, 2009 Letter to Pl., Def.'s Ex. 111.  A domestic return receipt indicates delivery was made on December 18, 2009.  Id.  On the same day, Sime sent an identical letter by certified mail to Michelle Schoning.  Sime Decl. at ¶ 6; Dec. 17, 2009 Letter to Michelle Schoning, Def.'s Ex. 112.  That letter was refused.  Id.  The EUO transcripts were never returned. Sime Decl. at ¶ 14.

Sime sent a separate letter addressed to Plaintiff and Michelle Schoning demanding the production of eleven different categories of documents.  Sime Decl. at ¶ 7A;[3] Dec. 21, 2009 Letter from Sime, Def.'s Ex. 113.  Plaintiff's attorney, Donato B. Masaoy III, responded to the letter and requested Sime narrow the scope of the request or explain the basis for the request. Sime Decl. at ¶ 7B, Dec. 30, 2009 Letter from Masaoy, Def.'s Ex. 114.  In response, Sime indicated Defendant declined to narrow the scope of the request and, generally, indicated all of the requests were relevant to proving or disproving Plaintiff's financial motive for starting the fire.  Id.

On May 12, 2010, Defendant, through Sime, denied coverage because Plaintiff failed to comply with his duties after loss under the policy.  Sime Decl. at ¶ 13; May 12, 2010 Letter from Sime 1, Def.'s Ex. 120.  The claim was denied because, after the December 4, 2009 EUO, Plaintiff refused to produce the documents requested at the EUO, failed to respond to any subsequent requests, and failed to return the signed EUO transcripts.  Id. at 2–3.  Plaintiff was

---

[3] Defendant has listed paragraph seven twice in the Declaration of Billy M. Sime.  See Sime Decl. at ¶ 7.  The first paragraph labeled "7" will now be considered "7A" and the second, "7B."

7 - OPINION & ORDER

advised that he could ask Defendant to reopen his claim if he produced the requested documents.
Id. at 3.  As of December 27, 2011, Plaintiff had not returned the signed EUO transcripts or
produced any of the requested information.  Sime Decl. at ¶ 14.

STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact
and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The
moving party bears the initial responsibility of informing the court of the basis of its motion, and
identifying those portions of "'the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence
of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting
Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine
issue of material fact, the burden then shifts to the nonmoving party to present "specific facts"
showing a "genuine issue for trial."  Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927–28
(9th Cir. 2009) (internal quotation omitted).  The nonmoving party must go beyond the pleadings
and designate facts showing an issue for trial.  Celotex, 477 U.S. at 322–23.

The substantive law governing a claim determines whether a fact is material.  Suever v.
Connell, 579 F.3d 1047, 1056 (9th Cir. 2009).  The court views inferences drawn from the facts
in the light most favorable to the nonmoving party and draws all reasonable inferences in that
party's favor.  Long v. City & County of Honolulu, 511 F.3d 901, 905 (9th Cir. 2007).

Defendant's motion for summary judgment is unopposed; Plaintiff's response was due
January 20, 2011.  A district court may grant an unopposed motion for summary judgment if the

movant's papers are sufficient to support the motion and do not on their face reveal a genuine issue of material fact.  See Henry v. Gill, 983 F.2d 943, 949-50 (9th Cir. 1993).

DISCUSSION

Plaintiff's sole cause of action is for breach of the insurance contract covering the property.  Compl. at ¶ 8.  Plaintiff alleges he gave prompt notice of the loss to Defendant, id. at ¶ 5, Defendant subsequently denied his claim, id. at ¶ 6, and he complied with all conditions of the policy, id. at ¶ 7.

Defendant argues Plaintiff's production of the requested documents and information is a condition precedent to recovery under the policy.  Def.'s Mem. Supp. Mot. Summ. J. 2, ECF No. 2 [hereinafter Def.'s Mem.].  Thus, Plaintiff's failure to furnish the information requested constitutes a breach of the policy.  Id.  Defendant also argues the motion should be granted with prejudice because Plaintiff's delays hindered Defendant's ability to investigate the loss.  Id. at 12.

Defendant argues Plaintiff breached his duties after loss in three ways: (1) by failing to produce the financial documents requested by Defendant, (2) by failing to answer questions related to his financial condition during his EUO, and (3) by failing to sign and return the transcript of his EUO.  Def.'s Mem. 2.  The language of the policy requires Plaintiff to "provide [Defendant] with records and documents [it] request[s]" and to "submit to examinations under oath and subscribe the same."  Rental Dwelling Policy 16, Def.'s Ex. 101.  Because the uncontroverted evidence offered by Defendant establishes Plaintiff failed to produce the requested financial documents, breaching the terms of the policy, I decline to address Defendant's contention that Plaintiff's refusal to answer some questions at his EUO and his failure to sign and return the transcript breached the terms of the policy.

Defendant first sought to obtain documents in Roger's October 23, 2009 letter requesting, among other things, Plaintiff produce documents related to the foreclosure status of the property and the sale of the property.  Rogers Decl. at ¶ 12.  Plaintiff responded by asserting, "My financial situation, or the fact that the property is in foreclosure ... is not relevant to the facts of the claim." Id. at ¶ 13.  Defendant's next request was through its attorney Sime in a letter dated November 16, 2009.  Nov. 16, 2009 Letter from Sime, Def.'s Ex. 108.  This letter requested Plaintiff bring to the EUO all documents related to nineteen identified categories.  Id.  At the EUO, Plaintiff produced some, but not all, of the requested documents.  See supra p. 5–6.  Consistent with Plaintiff's letter to Rogers, Plaintiff refused to produce documents related to the mortgage on the property.  EUO of Pl. 23–24, 27, 49–50, Def.'s Ex. 109.  Defendant's third request, again through Sime, was dated December 21, 2009.  It reiterated prior requests for information about the mortgage and the property's foreclosure status, and requested new information related to Plaintiff's personal finances.  Sime Decl. at ¶ 7A; Dec. 21, 2009 Letter from Sime, Def.'s Ex. 113.  Finally, Defendant denied Plaintiff's claim and in its denial letter, sent through Sime, it indicated Plaintiff could request the claim be reopened if he furnished the documents requested in the December 21, 2009 letter.  Sime Decl. at ¶ 13; May 12, 2010 Letter from Sime 2–3, Def.'s Ex. 120.  Sime declared there had been no production from Plaintiff as of December 27, 2011. Sime Decl. at ¶ 14.

The undisputed facts show Defendant sought a variety of documents from Plaintiff, all related to Plaintiff's financial condition and the property itself, and that Plaintiff failed to produce them.   There is evidence Plaintiff possessed at least some of the records requested by Defendant and refused to disclose them.  See, e.g., EUO of Pl. 49–50, Def.'s Ex. 109 ("[Sime]: Did you

ever receive any sort of statement from your lender concerning the amount of principal and interest payments? [Plaintiff]: Yes ... we receive monthly statements from them....[Sime]: Will you produce the mortgage statement? [Plaintiff]: "I don't know.").

Defendant articulated a reasonable basis for the requests. See, e.g., May 12, 2010 Letter from Sime, 3–4, Def.'s Ex. 120 ("Please be advised that questions still exist concerning your claim ... whether the origin and cause of the fire was accidental in nature.... whether you caused or procured the loss ... whether you made material misrepresentations after the loss."); Rogers Decl. at ¶ 21 ("The evidence concerning [Plaintiff's] financial condition was relevant to a determination of the extent of their financial duress and whether [Plaintiff] had a strong financial motive to start the fire."). The plain language of the policy required Plaintiff to produce documents when reasonably requested by Defendant. Rental Dwelling Policy 16, Def.'s Ex. 101. Additionally, Plaintiff was notified of Defendant's request for documents on November 16, 2009, the request was repeated several times through May 12, 2010, and was unfulfilled as of December 27, 2011. There is no disputed issue of material fact as to Plaintiff's failure to comply with some or all of Defendant's requests for document production pursuant to the terms of the policy. Therefore, Plaintiff has breached at least one provision in the insurance policy.

Defendant next argues Plaintiff's failure to tender the requested documents prejudiced its investigation of the claim. Def.'s Mem. 11. Defendant's investigator concluded the fire which destroyed Plaintiff's property was a result of arson. Rogers Decl. ¶ 8. The documents requested by the Defendant were intended to prove or disprove Plaintiff's financial motivation for starting the fire. Id. at ¶ 21. Defendant claims it was prejudiced because it was forced to make a determination about the validity of the claim with incomplete information. Id. at ¶ 23.

11 - OPINION & ORDER

Defendant made numerous document requests between October 20, 2009, Id. at ¶ 7, and May 11,

2010, when coverage was ultimately denied.  See Sime Decl. at ¶ 14.

Oregon law applies to the contract at issue in this case.  Alexander Mfg. v. Ill. Union Ins.

Co., 560 F.3d 984, 986 (9th Cir. 2009).  Oregon courts have not spoken clearly to the effect of a

breach of a document production or similar duty after loss provision.  See Gerke v.Travelers Cas.

Ins. Co., No. 3:10-CV-01035-AC, 2011 WL 4352243, at *9 (D. Or. Sept. 15, 2011).  If the

document production provision is a condition of forfeiture,[4] then Defendant must prove it was

prejudiced and that Plaintiff did not act reasonably in breaching the provision.  See Federated

Serv. Ins. Co. v. Granados, 133 Or. App. 5, 9, 889 P.2d 1312, 1315 (1995) ("The first inquiry is

whether the insurer was prejudiced by the claimant's conduct. If so, the second inquiry is whether

the claimant nevertheless acted reasonably in breaching the consent-to-settle provision.").  If, as

Defendant argues, the provision creates a condition precedent[5] to recovery, then the same

analysis applies.  See Lusch v. Aetna Cas. & Surety Co., 272 Or. 593, 596–98, 538 P.2d 902,

903–05 (1975) (holding notice of suit provision was condition precedent to duty to defend and

requiring insurer to show its prejudice and insured's unreasonableness); see also Gerke, 2011

WL 4352243, at *9 ("Oregon courts have required insurers to make the additional showing of

---

[4] "A condition of forfeiture exists when 'there is insurance coverage for the loss in the first place, but acts of the insured nullify the coverage[.]' "  ABCD ... Vision v. Fireman's Fund Ins. Companies, 304 Or. 301, 306, 744 P.2d 998, 1002 (1987).  "A condition of forfeiture disallows claims that otherwise are covered under a policy."  Wright v. State Farm Mut. Auto. Ins. Co., 223 Or. App. 357, 370, 196 P.3d 1000, 1007 (2008).

[5] A condition precedent is a contractual condition, which "is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due."  Wright, 223 Or. App. at 370 n.14, 196 P.3d at 1007 n.14 (2008) (internal citation and quotation omitted).

12 - OPINION & ORDER

prejudice when they seek to invoke the insured's noncompliance with the terms of the policy as a defense in cooperation provisions.").

The focus of the prejudice inquiry is on the defendant's ability to investigate the claim and ascertain its own liabilities.  See Id. at 599, 538 P.2d at 905 (applying the prejudice inquiry to a breach of the notice provision).

Plaintiff made no effort to produce any documents requested after his EUO.  See Rogers Decl. at ¶ 11–18.  These documents were necessary for Defendant to ascertain the validity of Plaintiff's claim, particularly because of the suspicious nature of the fire.  Id. at ¶ 8, 21–23.  Since Defendant could not evaluate the claim without the documents, I find that Defendant was prejudiced as a matter of law.  Additionally, Plaintiff's only excuse for his failure to produce the documents was that they were irrelevant to Defendant's claims process.  See, e.g., Rogers Decl. at ¶ 13.  However, plaintiff is wrong. The uncontested evidence clearly establishes Plaintiff did not act reasonably when he declined to tender the requested documents.  Thus, whether the provision is considered a condition precedent to recovery, or a condition of forfeiture, Plaintiff's failure to comply with the provision is a defense to his breach of contract claim.

Additionally, Plaintiff's policy contains an Amendatory Endorsement specific to Oregon. Rental Dwelling Policy 5, Def.'s Ex. 101.  Within the Endorsement is a provision requiring any suit brought to enforce the policy to be commenced within two years after the date of loss and only if there has been compliance with all policy provisions.[6]  This term was included to comply

_____

[6] Suit Against Us. No action shall be brought unless there has been compliance with the policy provisions and the action is started within two years after the date of loss or damage.
Rental Dwelling Policy 5, Def.'s Ex. 101.

with the requirements of O.R.S. § 742.240.[7]  Although the statute refers specifically to fire insurance policies, it has been interpreted to be required in homeowner's insurance polices as well.  Herman v. Valley Ins. Co., 145 Or. App. 124, 126 n.1, 928 P.2d 985, 987 n.1 (1996).  The incorporated language need not be identical, but only "substantial[ly] similar."  Id. Under Director, a suit is brought prematurely if a policy holder fails to perform a contractual condition and the policy at issue includes the language mandated by O.R.S. § 743.660.[8]  See 49 Or. App. 179, 187, 619 P.2d 649, 653 (1980); see also Gerke, 2011 WL 4352243, at *9–10.  The policy contains a provision substantially similar to the language required by O.R.S. § 742.240, and, as explained above, Plaintiff has failed to comply with at least one of his contractual duties after loss.  Thus, plaintiff's suit is premature.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[7] A fire insurance policy shall contain a provision as follows:

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 24 months next after inception of the loss."
   O.R.S. § 742.240.

[8] Lindsey v. Farmers Ins. Co. of Or., 170 Or. App. 458, 464 n.4, 12 P.3d 571, 574 n.4 (2000) ("ORS 742.240 was formerly ORS 743.660, enacted as Oregon Laws 1967, chapter 359, section 499.").

14 - OPINION & ORDER

CONCLUSION

Defendant's motion for summary judgment [#5] is granted.

IT IS SO ORDERED.

Dated this ___8th___ day of ___March_____, 2012

_/s/ Marco A. Hernandez_____
Marco A. Hernandez
United States District Judge

15 - OPINION & ORDER